IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 24, 2020

## STATE OF TENNESSEE v. SAMANTHA DARLENE BREWER

**Appeal from the Circuit Court for Blount County**
**No. C-26079   Tammy M. Harrington, Judge**

_____

### No. E2019-01361-CCA-R3-CD

_____

Following a revocation hearing, the trial court revoked the probation of Defendant, Samantha Darlene Brewer, and ordered confinement for her sentence. On appeal, Defendant alleges the trial court abused its discretion and requests split confinement and furlough to substance abuse and mental health treatment courses. Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ROBERT L. HOLLOWAY, JR., J., joined.

J. Liddell Kirk, Knoxville, Tennessee (on appeal) and Raymond Mack Garner, District Public Defender, Maryville, Tennessee (at trial) for the appellant, Samantha Darlene Brewer.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Assistant Attorney General; Michael L. Flynn, District Attorney General; and Ashley Salem, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

*Background*

On August 13, 2018, Defendant pled guilty to theft of property valued at more than $1,000 from the Belk store and received a sentence of two years to be served on supervised probation. The trial court ordered Defendant to complete alcohol and drug assessment and to follow all recommendations. Defendant was further ordered to complete fifty hours of community service and to have no contact with the Belk store. On

September 7, 2018, a probation violation warrant was issued against Defendant alleging that she violated the terms of her probation by testing positive for methamphetamine, morphine, and benzodiazepines. Defendant admitted to the violation and was reinstated to probation after serving thirty days in confinement.

On May 31, 2019, a second probation violation warrant was issued against Defendant alleging that she violated the terms of her probation by failing to obtain lawful employment, failing to complete a mental health assessment, and failing to provide proof of attending community support meetings. It was further alleged that Defendant was discharged from the Cognitive Behavior Intervention Program on December 7, 2018, and May 7, 2019, due to excessive absences. Defendant tested positive for morphine and benzodiazepines on January 3, 2019, and on May 10, 2019. She also admitted to the use of morphine. Defendant failed to make any payments toward court costs and supervision fees, and she failed to provide proof of completing any community service hours.

At the probation revocation hearing, Defendant stipulated that she tested positive for morphine and benzodiazepines on January 3, 2019, and May 10, 2019, and that she had not completed her community service hours or paid her court costs. We note that in the trial court's findings at the conclusion of the revocation hearing, the trial court said: "I'm not going to find a stipulation as to the benzodiazepines because [Defendant] said she had a prescription for that and I don't think it's really relevant at this point, given the positives for morphine." The drug screen results report notes "(RX)" beside of the positive result for benzodiazepines.

Defendant's probation officer, Sylvia Popova, testified that she began supervising Defendant on August 13, 2018. She said that the special conditions of Defendant's probation included: "community service, her curfew, no contact with Belk, an A[lcohol] & D[rug] assessment, and pay restitution - - two restitutions to Belk." Ms. Popova testified that Defendant did not complete a drug and alcohol assessment through the probation department, and she had not received anything indicating that Defendant completed an assessment elsewhere. She said that the paperwork received from the social worker indicated that Defendant refused alcohol and drug treatment because she had completed inpatient treatment in September 2018, and Defendant did not feel that she needed the additional treatment. It was also recommended that Defendant complete a mental health assessment, which Defendant agreed through her treatment plan to set up and complete on her own. Ms. Popova never received anything indicating that Defendant completed the mental health assessment. She noted that Defendant had been prescribed medication for her mental health through her primary care physician.

Ms. Popova testified that Defendant was discharged twice from her cognitive behavior intervention program. Defendant was supposed to have begun the class on December 10, 2018. Ms. Popova testified that Defendant missed classes on December 10, 11, and 17, 2018, and she was discharged from the program on December 17 due to

her absences. Defendant was granted an opportunity to retake the class which started again in January 2019. Defendant missed classes on February 4, 2019, April 8, 2019, April 29 and 30, 2019, and May 7, 2019. Defendant was again discharged from the cognitive behavior intervention program due to her absences. Ms. Popova testified that she had not received proof of employment from Defendant, and Defendant had not made any payments toward her court costs and supervision fees. Ms. Popova said that Defendant had not submitted any proof that she had completed her community service hours.

On cross-examination, Ms. Popova testified that Defendant's mental health complaint consisted of anxiety and depression for which Defendant had been prescribed Zoloft. She did not know what else Defendant had been prescribed. Ms. Popova testified that Defendant seemed fine during the times that Defendant reported to her. She was not aware of any of Defendant's physical difficulties or ailments. Ms. Popova noted that Defendant was supposed to report to her once or twice a month, and Defendant reported to her as required. She was aware that Defendant completed an inpatient treatment program in Florida in the fall of 2018. Ms. Popova agreed that Defendant tested positive for drugs after completing the inpatient treatment. She asked Defendant if she needed further treatment, and Defendant did not think she needed treatment. Ms. Popova testified that she had conversations with Defendant again after Defendant tested positive for drugs in May 2019, and Defendant said that she probably needed treatment. However, Defendant did not take any steps to get treatment.

Ms. Popova testified that Defendant's first probation violation involved a positive drug screen for methamphetamine and morphine, and she left the state without permission to go to Florida. It was Ms. Popova's opinion that Defendant is a drug addict, and she needs treatment for her addiction. She again noted that Defendant said that she did not need treatment when she was asked about it.

Defendant testified that she was in an in-patient treatment program in Florida for thirty-two days, and she completed the program. She came back to Tennessee and reported to Ms. Popova. Defendant was living with her mother at the time, and she was unemployed. Defendant testified that she sought employment through Staffing Solutions but she was told that she was not hirable due to her felony charge. Defendant testified that on April 24, 2019, her brother came home drunk and attacked her breaking her "L2 vertebra." He also broke her nose and fractured her right eye socket. Defendant thought that all of her injuries were now healed but she is in pain every day. She asserted that due to wearing a brace, her torso "is really weak and I keep tearing the muscles. And I don't - - I'm supposed to be in physical therapy right now, but I don't know what to do myself to strengthen it correctly."

Defendant testified that she missed meetings for her treatment program in December 2018 because she had the flu and forgot about the meetings. She was then

discharged from the program. Defendant acknowledged that she testified positive for morphine in January 2019. She testified that she used morphine because of an older back injury from 1998. Defendant asserted that she was placed on pain medication in 2000 and remained on it daily "until 2015 when I decided to come off of it. And I just got tired of hurting." She testified that she also had been "fighting a lot of depression as well." Defendant testified that she was diagnosed with depression in 1996 and was placed on Zoloft.

Defendant admitted that she told Ms. Popova that she did not have an addiction and did not need treatment. Defendant said that she thought it was "just a one-time thing" and that she would be able to control it. Defendant claimed that she did not complete her community service hours because she did not always have gas to put in her car to drive there. She testified that she went for community service once but arrived too late and went back home. Defendant asserted that she would do better if placed back on probation because "jail life" was not for her. Defendant testified that she tested positive for drugs in May 2019 because of her back and facial pain. She said that she had a prescription for hydrocodone at the time but it was not enough for the pain. Defendant agreed that she is a drug addict and needs treatment. She said that she would live with her mother if released back on probation, and she would have to go to "Allcor or somewhere" to look for a job.

On cross-examination, Defendant testified that she met with her forensic social worker, Shondra Jones, but she did not recall if Ms. Jones prepared a treatment plan for her. Defendant also did not remember completing a mental health assessment. Defendant testified that she did not make any efforts to go to treatment after completing the inpatient treatment program because she thought a social worker would call her. She did not try to contact Ms. Jones because she did not have her telephone number. Defendant thought that she signed something with Ms. Popova indicating that she needed help.

At the conclusion of probation revocation hearing, the trial court revoked Defendant's probation and ordered her to serve the balance of her sentence in confinement.

*Analysis*

On appeal, Defendant argues that that trial court erred by revoking her probation and ordering her to serve the balance of her original sentence in confinement. She contends that the trial court should have imposed a sentence of split confinement after which she would then be furloughed to substance abuse and mental health treatment courses.

In Tennessee, a trial court may revoke probation and order the imposition of the original sentence upon a finding, by a preponderance of the evidence, that the defendant has violated the conditions of his or her probation. Tenn. Code Ann. §§ 40-35-310, 311(e). The trial court has full discretionary authority to order the defendant to serve his or her sentence in confinement. *State v. Hunter*, 1 S.W.3d 643, 646 (Tenn. 1999). A trial court's judgment will not be disturbed absent an abuse of discretion. *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). An abuse of discretion occurs when "the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980).

The trial court in this case found that the State had met its burden of proof either through evidence presented at the revocation hearing or by stipulation that all of the violations contained in the probation violation warrant occurred. The trial court took into consideration Defendant's need for drug and mental health treatment. However, the trial court ultimately determined that the balance of Defendant's original sentence should be served in confinement. Specifically, the trial court found:

> But then we look to the actions. And once again really the testimony seemed to the Court, through demeanor and words, that this was more about [Defendant] doesn't think she needs to be in the jail as opposed to a sincere request for treatment or intervention. There was not a lot of sincerity or motivation in the testimony or in the actions. Needs it, but in no doubt does this Court think she's ready or truly wants it, which creates a significant issue.

> I'll even go to the part where, as the General was arguing and going through - - and these things, [defense counsel], you can't do anything about. But as you sit there with your client and she's going through - - the DA's going through her cognitive behavior intervention program and the excuses for the miss on December 10th, 11th and 17th, your client is sitting there rolling her eyes. You can't do anything with that, [defense counsel]. That after the proof - - and you can't do anything with how your client presents on the stand. You've done a fine job of putting forth a case that this is a defendant in need of intervention. The Court finds, though, that this is a defendant that is in no way motivated or ready for any intervention. So, therefore, she is revoked to serve the balance of her sentence in custody.

In this case, the evidence clearly supports the trial judge court's finding that the balance of Defendant's sentence should be served in confinement. This is Defendant's second probation violation in this case. Defendant concedes, and the proof shows, that she committed the probation violations which include: testing positive for morphine on

January 3, 2019, and May 10, 2019, failing to pay her court costs and supervision fees, failing to complete community service hours, failing to complete a mental health assessment as recommended by the forensic social worker, failing to obtain lawful employment, failing to provide proof of attending community support meetings or obtaining a sponsor, and being discharged twice from the cognitive behavior intervention program. Defendant only challenges the decision of the trial court to order confinement. Where the defendant admits to the violation of the terms of probation, withdrawal of probation by the trial court is "neither arbitrary nor capricious." *State v. Michael Emler*, No. 01C01-9512-CC-00424, 1996 WL 691018, at *2 (Tenn. Crim. App. Nov. 27, 1996).

It is well within the trial court's discretion to determine the appropriate disposition of the case after a violation has occurred. The trial court did not abuse its discretion in ordering confinement for Defendant's sentence because there is a plethora of evidence in the record to support this decision. Upon finding that the Defendant violated the terms of her probation, it was within the trial court's authority to order the Defendant to serve her original sentence in confinement. *See* Tenn. Code Ann. §§ 40-35-310 and -311(e); *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). Moreover, "an accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." *State v. Jeffrey A. Warfield*, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. at Nashville, Feb. 10, 1999); *see also State v. Timothy A. Johnson*, No. M2001-01362-CCA-R3-CD, 2002 WL 242351, at *2 (Tenn. Crim. App. at Nashville, Feb. 11, 2002). *State v. Makoyous Houston*, No. E2018-01118-CCA-R3-CD, 2019 WL 4274147, at *4 (Tenn. Crim. App. Sept. 10, 2019). Defendant is not entitled to relief on this issue.

## CONCLUSION

For the foregoing reasons, the decision of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE